IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAURICE McKAY,

   Petitioner,

v.

WARDEN WEBER,

   Respondent.

Civil Action No.: PWG-20-2960

**MEMORANDUM OPINION**

In response to this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Respondent filed a Motion to Dismiss or for Summary Judgment asserting that Petitioner has failed to exhaust administrative remedies and that his claim is otherwise without merit. ECF No. 6. Petitioner opposes the motion. ECF No. 8. Respondent filed a Reply (ECF No. 9) and Petitioner filed a Motion to Dismiss or for Summary Judgment (ECF No. 10) which shall be construed as a Motion for Leave to File a Surreply. No hearing is needed. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the petition is denied.

**Background**

The underlying facts in this case are not disputed. Petitioner Maurice McKay was arrested on January 2, 2018 by Maryland State authorities in Prince George's County, Maryland for multiple charges including possession of a firearm by a convicted felon. ECF No. 6-2 at 2, ¶ 3, *see also id.* at 8-12 (docket entries for *State v. McKay*, Case No. CT180329X (Cir. Ct. Prince George's Co., Md. 2018)).

On April 14, 2018, McKay was arrested in the District of Columbia on charges of possessing a firearm. McKay was charged on April 16, 2018 for illegal possession of a firearm in

the Superior Court for the District of Columbia.  ECF No. 6-2 at 14-19 (docket entries for *U.S. v. McKay*, Case No. 2018 CF2 005803 (Sup. Ct. for Dist. Of Col. 2018)).  McKay remained detained in the District of Columbia pending trial.  *Id.*

On May 30, 2018, McKay was indicted in this Court on charges of possession of a firearm and ammunition by a felon for the incident occurring on January 2, 2018.  ECF No. 6-2 at 3, ¶ 5; *see also U.S. v. McKay*, Crim. Case PWG-18-305 (D. Md. 2018) at ECF No. 1.

On September 10, 2018, McKay was transferred from the District of Columbia to the custody of the U.S. Marshals Service ("USMS") on authority of a writ issued by this Court and for the purpose of his initial appearance in Criminal Case PWG-18-305.  ECF No. 6-2 at 3, ¶ 6.  The transfer to the USMS was temporary, McKay remained in the legal custody of the District of Columbia, and he was returned to the physical custody of the District of Columbia on the same day.  *Id*.

On September 26, 2018, McKay entered a guilty plea in the District of Columbia case and received a sentence of 14 months, followed by three years of supervised release.  ECF No. 6-2 at 29.

On October 19, 2018, McKay was again transferred to USMS custody for the purpose of standing trial in this Court.  ECF No. 6-2 at 4, ¶ 8, and at 24.

McKay completed serving the District of Columbia sentence while in USMS custody on April 19, 2019.  *Id*. at 4, ¶ 9 and at 32 (Inmate Data Sheet noting "inmate was scheduled for release: 4-19-2019 via GCT REL").

On June 17, 2019, McKay was sentenced by this Court to serve 48 months in prison pursuant to a plea agreement.  ECF No. 1 at 1; ECF No. 6-2 at 4, ¶ 10, *see also* Crim. Case PWG-18-305 at ECF No. 41 (Judgment).  This Court gave McKay "[c]redit time served since January 3,

2018 to February 1, 2018; March 1, 2018 (State detention for same charges) and September 10, 2018 (Federal detention)." Crim. Case PWG-18-305 at ECF No. 41 (Judgment).

The parties differ in their view regarding whether McKay has been provided credit for the period of time specified by this Court when his 48-month sentence was imposed. According to McKay, he should be receiving 281 days of jail credit as was reflected in his initial computation sheet prepared when he arrived at Federal Correctional Institution-Cumberland ("FCI-Cumberland"). ECF No. 1 at 1-2; ECF No. 1-3 at 4 (Sentence Monitoring Computation Data, July 31, 2019). McKay further claims that the Warden then "revoke[d] [his] jail credits" because he received the benefit of those credits for his District of Columbia sentence. ECF No. 1 at 2. He argues that the Bureau of Prisons ("BOP") has failed to "consider the sentencing court's intent" in doing so. *Id*.

Respondent explains that pursuant to 18 U.S.C. § 3585(a), it is the responsibility of the United States Attorney General and the BOP to determine when a sentence begins for a prisoner committed to their custody and whether or not he should receive credit for any time spent in custody. *See also United States v. Wilson*, 503 U.S. 329, 335 (1992); 18 U.S.C. § 3621(a). The authority to calculate federal sentences was delegated to the BOP by the Attorney General. *See* 28 C.F.R. § 0.96 (2010). With that authority, the BOP determines when a federal prisoner's sentence commences and when it expires as well as how credit is applied for prior custody and good conduct. *Wilson*, 503 U.S. at 334. A federal sentence does not commence until a prisoner has been received into custody for service of the sentence. *See* 18 U.S.C. §3585(a). Credit for prior custody under §3585(b) is limited to "service of a term of imprisonment . . . that has not been credited against another sentence."

3

Consonant with this responsibility, Respondent points to McKay's erroneous belief that this Court awarded him jail credits for the period of time between September 10, 2018 through June 17, 2019 because McKay was housed in a federal detention center awaiting trial. However, Respondent correctly notes that this Court's notation of "September 10, 2018 (Federal detention)" references the one day McKay was removed from the District of Columbia to USMS custody for the purpose of his initial appearance in Criminal Case PWG-18-305. Respondent further explains that McKay's 48-month sentence commenced on June 17, 2019, the day it was imposed by this Court. McKay was awarded 91 days of prior custody credit for time spent in official detention which includes the following periods of time:

| | |
|---|---|
| January 2, 2018 through February 1, 2018 | (31 days) |
| March 1, 2018 | (1 day) |
| September 10, 2018 | (1 day) |
| April 20, 2019 through June 16, 2019[1] | (58 days) |

Respondent therefore contends that McKay is receiving all prior custody credit to which he is legally entitled.

**Legal Standard**

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specifically, McKay must establish "facial plausibility"

---

[1] This period of time represents the day after the District of Columbia sentenced McKay (April 20, 2019) through the day before this Court imposed its sentence (June 16, 2019). ECF No. 6-2 at 50.

4

by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The court need not accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Well-pleaded facts as alleged in the complaint are accepted as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Factual allegations must be construed "in the light most favorable to [the] plaintiff." *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (quoting *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062 (4th Cir. 1984)).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. On those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to

judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In this inquiry, a court must view the facts and the reasonable inferences drawn "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252. This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours & Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448–49 (4th Cir. 2012). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs.*

*Applications & Serv.* Co., 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56.  Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." *Harrods,* 302 F.3d at 244. (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

### McKay's Motion to Dismiss or for Summary Judgment

As noted, McKay filed an Opposition Response to Respondent's Motion to Dismiss or for Summary Judgment and later filed what he titles a Motion to Dismiss or for Summary Judgment in which he addresses matters raised in Respondent's Reply and reiterates arguments raised in his Opposition Response.  ECF No. 10.  No party is entitled to file a surreply unless otherwise ordered by the Court.  *See* Local Rule 105.2(a) (D. Md. 2016).  A surreply is most often permitted when the moving party must respond to matters raised for the first time in a reply.  *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D. D.C. 2001).  McKay did not seek leave of court to file a surreply and Respondent did not raise new matters in the reply.  Rather, Respondent addressed what is ostensibly new claims McKay raised in his Opposition Response.  ECF No. 9.  Accordingly, McKay's motion (ECF No. 10) shall be denied as an unauthorized surreply.

### Discussion

Respondent asserts that the merits of McKay's claim may not be reached by this Court because he has failed to exhaust administrative remedies prior to filing his petition.  While Respondent acknowledges that McKay filed one administrative remedy regarding the jail time

7

credit he seeks in his petition on October 9, 2019, which was denied by the Warden at FCI-Cumberland, McKay never appealed that denial to the Mid-Atlantic Regional Office. *See* ECF No. 6-3 at 4, ¶¶ 5, 6. McKay's failure to appeal the response, according to Respondent, constitutes a failure to exhaust administrative remedies and requires dismissal.

McKay claims in response that he "filed a great many request[s] to the institution, case manager, record office . . . and to sentencing Judge Honorable Paul Grimm" in an attempt to "resolve the issues/matters with the institution but was met with resistance and even harm." ECF No. 8 at 2. He maintains that the assertion of the defense that his claim has not been administratively exhausted amounts to a lack of respect for his right to be free from cruel and unusual punishment. *Id*. at 1. McKay stops short of asserting that he was prohibited through retaliation or intimidation or was otherwise unable to exhaust administrative remedies.

In the event a prisoner disputes the computation of his sentence or the application of credits, he is permitted to seek a remedy for the grievance through the administrative remedy process in place in the Bureau of Prisons facilities. *See* 28 C.F.R. § 542.10 *et seq*.; *see also United States v. Mitchell*, 845 F.2d 951, 952 (11th Cir.1988) ("[A] federal district court does not have jurisdiction to entertain a federal prisoner's petition for jail time credit until the prisoner has exhausted his administrative remedies with the Attorney General under 18 U.S.C. § 3568.").

The BOP has established a four-level administrative remedy process for inmates to resolve concerns related to their confinement. *See* 28 C.F.R. § 542.10 *et seq*. Inmates must first attempt informal resolution with staff. *See* 28 C.F.R. § 542.13. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. §542.14(a). If an inmate is dissatisfied with the Warden's response to the formal complaint, he

may appeal, using the appropriate form, to the Regional Director within twenty calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If still dissatisfied, the inmate may appeal the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, D.C., using the appropriate form. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. *See id.* An inmate has not exhausted his administrative remedies until he has pursued his grievance through all levels. *See* 28 C.F.R. § 542.15(a).

Here, the undisputed facts establish that while McKay made an initial attempt to have his claim addressed through the administrative remedy procedures in place at FCI-Cumberland, he abandoned the process prematurely and did not appeal the denial of his request. As noted, there is no evidence that McKay was somehow prevented from accessing the procedure, leaving no basis for finding that his failure to exhaust is excusable. However, even if McKay had properly exhausted his claim prior to filing his petition in this Court, his claim is without merit based on the undisputed facts.

McKay does not dispute that he received the benefit of a portion of the period of time he lays claim to, September 11, 2018 through April 19, 2019, against his District of Columbia sentence. Under 18 U.S.C. § 3585(b), McKay cannot receive double credit for time credited to another sentence. Further this Court did not make McKay's 48-month sentence concurrent to the District of Columbia sentence. Crim. Case PWG-18-305 at ECF No. 41 (Judgment). McKay's disagreement as to what the law means is not a genuine dispute of material *fact* and therefore does not defeat the motion for summary judgment.

## Conclusion

By separate Order that follows, the Petition for Writ of Habeas Corpus shall be denied, Respondent's Motion to Dismiss or for Summary Judgment shall be granted, and McKay's motion shall be denied.

5/20/2021_____         _____/s/_____
Date                                                    Paul W. Grimm
                                                        United States District Judge